LARRY E. DODSON, Plaintiff-Appellant, v. ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

Third District No. 3—85—0239

Opinion filed April 11, 1986.

BARRY, J., dissenting.

Thomas J. Edstrom, of American Federation of State, County & Municipal Employees, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Candida Miranda, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Larry Dodson, was laid off from his position as Correctional Residence Counselor I as a result of the closing of the correctional center to which he was assigned. On appeal, Dodson asserts that the defendant, Civil Service Commission, erred in finding that there were no vacant positions for which Dodson qualified via a voluntary reduction in pay grade.

It is undisputed that Dodson was laid off from his position with the Illinois Department of Corrections (DOC) on February 15, 1983. It is also undisputed that the Hanna Youth Facility, the facility to which Dodson wanted to transfer, was understaffed. Under the relevant contract between the State of Illinois and the AFSCME, an employee who was laid off could take a voluntary reduction in pay grade in order to transfer to a vacant position within the same county.

Dodson asserted before the Commission that, as a laid-off employee, he was entitled to transfer at a reduced pay grade to the Hanna Youth Facility. The DOC responded that Dodson was not entitled to transfer because there were no vacant positions due to a hiring freeze imposed by the Governor. Dodson challenged whether the State proved that a freeze had prevented the filling of vacancies at the Hanna facility.

The Commission found that the DOC proved that a freeze had been imposed, so that any vacancies at the Hanna facility were not *bona fide* vacancies. The Commission relied upon documents submitted by the DOC pertaining to job vacancies occurring at the Hanna facility. These documents were captioned "Request for Exemption from Executive Order." The director of the Hanna facility testified that as a result of the order creating a hiring freeze, he was required to submit a "Request for Exemption from Executive Order" in order to fill a vacancy at his facility. The Commission found that the documents were sufficient to establish that a freeze existed, absent any proof to the contrary, which resulted in no *bona fide* vacancies at the Hanna facility.

The plaintiff appealed the Commission's decision to the circuit court of Peoria County. The circuit court affirmed, finding that the Commission's decision was not contrary to the manifest weight of the evidence.

The sole issue in the instant appeal is whether the Commission erred in finding that the State proved that a hiring freeze existed on February 15, 1983.

We affirm the decision of the Commission and the judgment of the circuit court. The crux of the plaintiff's case before the Commission was that the DOC had manipulated the hiring and transfer procedures to prevent the plaintiff from obtaining employment at the Hanna facility. No evidence was introduced which put into question the existence of the executive order establishing the hiring freeze. Counsel for the plaintiff stated during the Commission hearing:

"Mr. Hearing Officer, if I may comment I think that this has direct impact on both those issues, first of all that the, [*sic*] the issue of the freeze was manipulated so as to deny Mr. Dodson the right to take a voluntary reduction * * *."

Thus, the plaintiff did not challenge the existence of the freeze before the Commission, but challenged instead the application of the freeze to affect the plaintiff's contractual rights.

The judgment of the circuit court of Peoria County is, therefore, affirmed.

Affirmed.

SCOTT, J., concurs.

JUSTICE BARRY, dissenting:

The issue as framed by plaintiff for our review is not whether a hiring freeze existed on February 15 of 1983, but, rather, "whether the Civil Service Commission's decision and the circuit court's upholding thereof—that there was no job vacancy for Dodson to fill— was arbitrary, capricious or contrary to the manifest weight of the evidence." In the trial court, the issue was framed in a slightly different manner, i.e., "whether the Civil Service Commission's decision—that 'Larry Dodson has failed to prove that his layoff was in violation of the Personnel Rules, or the negotiated agreement for the RC-6 bargaining unit and that his appeal, therefore be denied' was against the manifest weight of the evidence." I find it necessary to recite the issues as they have been presented by the plaintiff for administrative review because, in my opinion, the majority has reached an erroneous result as a direct consequence of misstating the issue.

A proper analysis of the case further requires our consideration of the personnel rules defining the employee's rights and obligations when faced with a layoff.

"Rule 302.520

An operating agency may request the indeterminate layoff of an employee because of lack of funds, material change in duties or organization or lack of work or the abolition of a position for any of these reasons. Based on class, agency, county, or other designation, an indeterminate layoff shall be within an organizational unit justified by operations and approved prior to layoff by the Director ***. [A] certified employee as defined in Rule 2—530 who is subject to indeterminate layoff as a result of the Director's approval of the layoff plan shall be promptly notified thereof of the effective date of voluntary layoff, and shall then be advised of the opportunity to request voluntary reduction to a current vacant position in accordance with Rule 2—500 ***."

"Rule 302.550

A certified employee as defined in Section 302.530 who is subject to indeterminate layoff as a result of the Director's approval of a layoff plan shall be promptly notified thereof of the effective date of layoff, and shall then be advised of the opportunity to request voluntary reduction to a current vacant

position in accordance with Section 302.500. An employee seeking voluntary reduction must request such in writing to the head of the employing agency prior to the proposed effective date of layoff."

"Rule 302.560

In the event a certified employee as defined in Section 302.530 requests voluntary reduction as a result of his/her pending indeterminate layoff, the certified employee shall be preferred for any current vacant position in a lower class within the same agency and location in which the employee is then incumbent at the time of such layoff over any probationary or provisional employee, any applicant on an eligible list for such vacant position and any certified employee requesting such reduction who is not subject to layoff."

The rules require that the affected employee submit his request for a voluntary reduction in writing prior to the proposed effective date of layoff—in this case, February 15, 1983. The record discloses that Dodson testified that he had in fact complied with this requirement, but that he had not kept a copy of the paper. On cross-examination, plaintiff testified that the supervisor to whom he had given the written request, Mr. Adams, was no longer with the Department. Plaintiff's evidence in this regard was uncontradicted.

The evidence is further uncontradicted that two "vacant positions" existed at the Hanna City facility at the time of plaintiff's layoff. One was filled on February 16, 1983, by Tom Rahak, who had more seniority than plaintiff, and the other, by Terry Jackson on April 8, 1983. It does not appear that Jackson had more seniority for the position than Dodson, and the only excuse offered by the Department for not filling that vacancy with Dodson was that the Governor did not sign the freeze exemption form until April 8, 1983.

In my opinion, the existence or nonexistence of a "vacant position," as that term is used in the personnel rule, must be determined without regard to the administrative delay in obtaining authorization to fill such "vacant position." With respect to the position filled by Terry Jackson, the record discloses that the deputy director of the Hanna City facility had submitted the required form requesting an exemption from the hiring freeze in January 1983. By my view, the fact that the exemption was granted by the Governor's office at most only validates the fact that a "vacant position" existed in January 1983 at the time the director made his request to fill it.

I cannot subscribe to the tacit reasoning of the majority that the delay in approval of the request operates retroactively to negate the

fact of the existence of a "vacant position" until such time as authorization to fill the position is given. The majority's reasoning leads to an unworkably strained construction of what constitutes a "vacant position." It also breeds the type of argument advanced by plaintiff in this case— that the executive delay in authorizing the filling of existing vacant positions was motivated by bad faith.

By my view, the plain and commonly understood meaning of a "vacant position" is one for which no employee has been hired. It is not an elusive concept that vanishes from the time it is recognized by the department head and the time another executive authorizes it to be filled. So long as the position remains open, the department suffers from understaffing. As the majority acknowledges, such was unrefutedly the case here. The record is replete with reports by the Hanna City facility of serious problems of understaffing in 1982 and 1983. The Governor's hiring freeze did not evaporate Hanna City's need to replace employees who, for various reasons, left the facility.

Because I find that a vacant position existed at the Hanna City facility at the time of plaintiff's layoff and that there is no evidence indicating plaintiff did not comply with the rules for requesting a voluntary reduction, I would reverse the judgment of the circuit court of Peoria County and the Civil Service Commission and order that plaintiff's employment be reinstated by the Department of Corrections.